## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AMMIE B.[1]**, | Case No. 6:19-cv-145-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Brent Wells, HARDER WELLS BARON & MANNING PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jeffrey R. McClain, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Ammie B. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for disability

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

insurance benefits ("DIB") and Supplemental Social Security Income ("SSI"). Because the Commissioner's findings are not supported by substantial evidence, the decision is REVERSED and this case is REMANDED for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins*, 466 F.3d at 882 (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed applications for DIB and SSI on January 15, 2015, alleging disability beginning January 30, 2011. AR 242-49. Plaintiff was born on March 23, 1974 and was 36 years old on the alleged disability onset date. AR 22. The agency denied the claims both at first and upon reconsideration, and Plaintiff requested a hearing. In February 2018, Plaintiff appeared with counsel for a hearing before the ALJ. AR 29-58. The ALJ issued a decision denying Plaintiff's claims for benefits. AR 10-28. Plaintiff requested review of the hearing decision, which the Appeals Council denied on in November 2018. AR 236-38, 1-6. The ALJ's decision then became the final decision of the agency from which Plaintiff now seeks review.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Act through

December 31, 2016 and proceeded to the sequential analysis. AR 15. At step one the ALJ

determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset

date. *Id.* At step two, he found the following severe, medically determinable impairments: major

depressive disorder and posttraumatic stress disorder ("PTSD"). *Id.* At step three, he found that

neither of those impairments met or equaled the severity of any impairment listed at 20 C.F.R.

Part 404, Subpart P, Appendix 1. AR 16. Between step three and step four, the ALJ formulated

Plaintiff's RFC and found that she could

> perform medium work as defined in 20 CFR 404.1567(c) and
> 416.967(c) except that she can perform simple routine tasks
> requiring a reasoning level of one or two, and can tolerate
> occasional contact with the public and coworkers. She cannot
> engage in team-based work. She can tolerate only occasional
> changes to work routines and processes.

AR 18. Proceeding to step four, the ALJ found Plaintiff unable to perform any past relevant

work. AR 21. At step five, he found that Plaintiff retained the ability to perform the

requirements of jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that Plaintiff was not disabled. AR 23.

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to include in Plaintiff's RFC every limitation supported by substantial evidence, (2) improperly rejecting the medical opinion testimony of Dr. Douglas Smyth, (3) improperly rejecting the "other" medical opinion testimony of Lianne Dyche and Linda Lieberman, (4) improperly discounting Plaintiff's own subjective symptom testimony, and (5) improperly rejecting the lay witness testimony of Plaintiff's sister.

## A.  RFC Formulation

The RFC represents the most that a claimant can do despite his or her physical or mental impairments. 20 C.F.R. § 404.1545. In formulating the RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." *Id.* In determining a claimant's RFC . . . the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those limitations that are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). That is, the ALJ need not "incorporate evidence from opinions . . . which were permissibly discounted." *Batson*, 359 F.3d at 1197.

Two physicians—Drs. Boyd and Kaper—reviewed Plaintiff's medical record. Dr. Kaper opined that, among other limitations, Plaintiff could understand and remember only one- or two-step instructions. AR 83. Dr. Kaper noted that Plaintiff could not understand and remember more complicated instructions on a consistent basis. *Id.* Dr. Boyd agreed with this aspect of Dr. Kaper's assessment of Plaintiff's limitations. AR 119. The ALJ assigned "great weight" to

the medical source opinions of Drs. Kaper and Boyd. AR 20. Yet, the ALJ formulated an RFC limiting Plaintiff to "simple routine tasks requiring a reasoning level of either one or two." AR 18.

Plaintiff contends that the ALJ improperly accounted for the credited opinions of Dr. Kaper and Boyd by limiting Plaintiff to "simple routine tasks requiring a reasoning level of either one or two" in the RFC. Plaintiff argues that this limitation is inconsistent with Dr. Kaper's more restrictive opinion limiting Plaintiff to tasks involving one- or two-step instructions. The Court agrees that this is a significant conflict. Each of the jobs that he Vocational Expert identified in his testimony required level two reasoning, and level two reasoning is incompatible with a restriction to one- or two-step tasks. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (recognizing the conflict between the demands of level two reasoning and a limitation to one- to two-step tasks). Thus, the ALJ formulated an RFC that exceeded "the concrete limitations in [Dr. Kaper's] medical opinion." *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed. App'x 15, 17–18 (9th Cir. 2012).

The Commissioner responds by arguing that the ALJ meant that Plaintiff could perform simple routine tasks *and also* perform tasks requiring reasoning level one or two. ECF 10 at 16. That, however, contradicts the plain text of the ALJ's decision, in which the ALJ states Plaintiff can "perform simple routine tasks requiring a reasoning level of one or two"—there is no "and also." AR 18. The Court cannot rely on the Commissioner's *post hoc* interpretation of the ALJ's RFC; the Court may only rely on the RFC itself, which contradicts the credited medical opinion testimony of Drs. Kaper and Boyd. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2015) (holding that courts may not affirm an ALJ's adverse decision based on evidence the ALJ did not invoke). Thus, the ALJ committed legal error in formulating the RFC.

**B.  Medical Opinion Testimony of Dr. Smyth**

The ALJ serves as "the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008). In that capacity, the ALJ is responsible for making credibility determinations, resolving conflicts in the medical evidence, and resolving ambiguities." *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If, however, "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, "even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn*, 495 F.3d at 633.

Dr. Smyth was one of Plaintiff's examining physicians. In formulating his opinion, Dr. Smyth conducted a clinical interview, performed a mental status examination, and reviewed "a single medical chart note dated 3/19/15." AR 638. The medical chart note is from a medication management appointment Plaintiff had with Dr. Lisa Attack, DO. She noted that Plaintiff was "tearful at times during the interview." AR 626. After examining Plaintiff, Dr. Smyth diagnosed her with Major Depressive Disorder of severe designation, PTSD, and Social Anxiety Disorder. AR 643. He noted that Plaintiff "did not appear to be exaggerating symptoms," that the "[i]nformation provided regarding activities of daily living appeared to be consistent with observed behavior," and that the results of his examination "are considered to be a valid reflection of her current level of functioning." *Id.* He ultimately assessed that Plaintiff's

"[p]ersistence and pace appeared markedly compromised secondary to emotional

decompensation." *Id.* At the administrative hearing, Plaintiff's attorney argued that Dr. Smyth's

opinion supported finding that Plaintiff could not sustain persistence and pace at an acceptable

and that she could not sustain competitive employment because of emotional decompensation

and tearfulness. AR 56.

The ALJ afforded only partial weight to Dr. Smyth's opinion "because [Dr. Smyth]

admitted that he was only able to review a limited amount of records and thus had to rely heavily

upon the claimant's own self-reported limitations." AR 21. Dr. Smyth, however, does not say

that he relied "heavily" on Plaintiff's self-reports anywhere in his opinion. The Commissioner

incorrectly equates Dr. Smyth's partial reliance on Plaintiff's self-reports with a finding that

Dr. Smyth's opinion was "unsupported by clinical findings." ECF 10 at 9. No matter how much

Dr. Smyth relied on Plaintiff's subjective complaints, "an ALJ does not provide clear and

convincing reasons for rejecting an examining physician's opinion by questioning the credibility

of the patient's complaints *where the doctor does not discredit those complaints* and *supports his*

*ultimate opinion with his own observations.*" *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-

1200 (9th Cir. 2008) (emphasis added). Dr. Smyth did not discredit Plaintiff's complaints—he

specifically noted that Plaintiff "did not appear to be exaggerating symptoms." AR 643. He also

supported his ultimate opinion with his own observations. He noted that the testimony Plaintiff

provided about her activities of daily living "appeared to be consistent with observed behavior."

*Id.* Further, he based his opinion not just on Plaintiff's subjective complaints but also on a

clinical interview and mental status exam. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th

Cir. 2017) (noting that both clinical interview and mental status exams are "objective measures

and cannot be discounted as 'self-report.'"). The ALJ erred by discounting Dr. Smyth's medical opinion.

## C.  "Other" Medical Opinion Testimony of Ms. Dyche and Ms. Lieberman

Effective March 27, 2017, the Social Security Administration amended its regulations and Social Security Rulings ("SSRs") relating to the evaluation of medical evidence, including the consideration of "acceptable medical sources" and "non-acceptable medical sources" or "other medical sources."[2] Most of these changes were effective only for claims filed after March 27, 2017. The Administration, however, implemented revised versions of 20 C.F.R. §§ 404.1527(f) and 416.927(f) to provide "clear and comprehensive guidance" about how to consider "other" medical sources for claims filed before March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed before March 27, 2017, and the ALJ issued his opinion after March 27, 2017, the revised versions of 20 C.F.R. § 404.1527, § 416.927, §§ 404.1527 and 416.927 governs Plaintiff's claim.

The revised regulations incorporate the policy in SSR 06-03p of separating acceptable medical sources (licensed physicians and certain other qualified specialists) from "other" medical sources, and generally giving less deference to other medical sources. It also incorporates the policies of requiring the ALJ to consider "other" medical source opinions, explain the weight given to such opinions, provide sufficient analysis to allow a subsequent

---

[2] Among other things, the Commissioner rescinded SSR 06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

review to follow the ALJ's reasoning, and to provide sufficient detail and explanation if the ALJ gives greater weight to an opinion from an "other" medical source than a medical opinion from a treating source. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-45; *see also* 20 C.F.R. §§ 404.1527(f), 416.927(f). Because Ms. Dyche is a Licensed Clinical Social Worker ("LCSW") and Ms. Lieberman is a Certified Nurse Midwife ("CNM"), each is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id*. at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'"

*Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

### 1. Ms. Dyche, LCSW

Ms. Dyche provided Plaintiff with individual and group therapy from 2014-2015. In October 2015, she assessed many moderate and marked impairments in Plaintiff's understanding and memory, sustained concentration and persistence, social interactions, and adaptation. AR 676-77. Ms. Dyche gave her opinion by filling out the standard form and included written explanations for her ratings. AR 678-80. Ms. Dyche opined that she did "not foresee [Plaintiff] returning to full-time employment within the next several years." AR 708. Although Ms. Dyche did not "have the opportunity to observe or evaluate [Plaintiff's] employment-related behaviors," she based her opinion on her observations that Plaintiff's "ongoing struggle with PTSD, anxiety and depressive symptoms . . . interfere in every facet of her life and prevent her from daily functionality." *Id.*

The ALJ gave two reasons for discounting Ms. Dyche's opinion. He gave Ms. Dyche's opinion "little weight" because it was "based in part upon [Plaintiff's] own report of her condition," and Ms. Dyche "admitted that she had had little opportunity to observe or evaluate [Plaintiff's] employment related behaviors." AR 21. He also noted that the "extreme limitations" were "inconsistent with the overall medical evidence of record which showed that [Plaintiff] was able to take college classes and travel to distant foreign and domestic locations." *Id.* Plaintiffs argue that neither of these reasons is germane because (1) Ms. Dyche opined Plaintiff's

psychological problems affected "every facet of her life" and (2) the modified circumstances of Plaintiff's travel are not inconsistent with Ms. Dyche's opinion.

Plaintiff contends that none of these activities are inconsistent with Ms. Dyche's opinion because Plaintiff traveled only with family members and failed the college classes. But even if the record evidence is susceptible to that interpretation, the Commissioner's conclusion must be upheld. *See Burch*, 400 F.3d at 679. The ALJ identified in his opinion which parts of Ms. Dyche's opinion he disagreed with: the "extreme limitation[]" that Plaintiff "could not return to full time employment for the next several years." AR 21. The Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson*, 359 F.3d at 1193. The ALJ properly discounted Ms. Dyche's opinion that Plaintiff would not be able to work full-time for several years based on its inconsistency with her travel and experience taking college classes.

### 2. Ms. Lieberman, CNM

Ms. Liebermann also provided Plaintiff with psychological care from 2014-2015. In March 2015, Ms. Lieberman opined that Plaintiff "has limitations in speaking, concentration, normal social interaction, and ability to adapt" and "is not at this time able to leave her home easily to attend to tasks." AR 617. Ms. Lieberman noted that Plaintiff could drive but only with a support person who would interact with gas station attendants. *Id.* The ALJ rejected Ms. Lieberman's medical opinion that Plaintiff could not leave her home because it was inconsistent with her "travel to Costa Rica only four months prior" and her "demonstrated ability to take classes at the local community college." AR 21.

Plaintiff objects and argues that her travel activities and enrollment in community college courses are not inconsistent with Ms. Lieberman's medical opinion. These were germane reasons to reject Ms. Dyche's medical opinion, and they are also germane reasons to reject

Ms. Lieberman's medical opinion. *See Molina*, 674 F.3d at 1114 (when "the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness"). Plaintiff also argues that by rejecting Ms. Lieberman's opinion, the ALJ improperly picked out a "few isolated instances of improvement" and "treat[ed] them as a basis for concluding [Plaintiff] is capable of working." *Garrison*, 759 F.3d at 1017. The Court disagrees. Plaintiff traveled to Costa Rica only four months before Ms. Lieberman provided her medical opinion. The record shows that Plaintiff improved steadily throughout her treatment with Ms. Lieberman. During Plaintiff's first visit in July 2014, Ms. Lieberman observed that Plaintiff was "deeply depressed and it is difficult for her to maintain emotional stability." AR 594. By March 2015, Ms. Lieberman observed that Plaintiff was making "slow steady gains." AR 617. The ALJ properly discounted Ms. Lieberman's medical opinion.

## D.  Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not

show that her impairment could reasonably be expected to cause the severity of the symptom she

has alleged; she need only show that it could reasonably have caused some degree of the

symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46). The ALJ may not, however, discount testimony "solely because"

the claimant's symptom testimony "is not substantiated affirmatively by objective medical

evidence." *Robbins*, 466 F.3d at 883. The ALJ's decision relating to a claimant's subjective

testimony may be upheld overall even if not all the ALJ's reasons for rejecting the claimant's

testimony are upheld. *See Batson*, 359 F.3d at 1197.

The Commissioner superseded Social Security Rule ("SSR") 96-7p governing the

assessment of a claimant's "credibility" and replaced it with SSR 16-3p. SSR 16-3p eliminates

the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination

of an individual's character," and requires the ALJ to consider all of the evidence in an

individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p,

*available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine

"the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

In her initial application, Plaintiff explained that she had been diagnosed with PTSD and major depressive disorder. AR 17. She alleged that these disorders interfered with her ability to work full time and engage in activities that required remembering, concentrating, completing tasks, and getting along with others. At the hearing, she testified that her PTSD symptoms worsened when she took over a sex offender caseload in her work as a probation officer. This was particularly difficult for Plaintiff, because she is a survivor of sexual abuse. AR 39. She began to experience flashbacks, difficulty sleeping, and severe anxiety whenever she left her house. She stopped working as a probation officer in January 2011 after she attempted suicide. She testified that she took some trips in the following years but had days when she could not leave her room for weeks at a time or interact with anybody. She briefly attended community

college but dropped out because of her severe anxiety. At the time of the hearing, she testified

that she would sometimes leave her house to visit her sister, go to the post office, or go grocery

shopping. AR 45.

Plaintiff acknowledged that her symptoms were cyclical—she has "periods of higher

functionality" interspersed with periods where she does not leave her home for weeks. She

reportedly can usually stay functional for about a month until the cumulative anxiety takes its

toll, and she needs to enter a "recovery period." AR 46. Plaintiff testified that she could probably

perform a job where she performed the same task repeatedly and did not have to interact with

people during her functional period. But she alleged that she could not perform even this type of

work during her non-functional periods.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms" but that her "statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record." AR 19. The ALJ provided three reasons for that

conclusion. He first noted that the "medical record does not support the severity of [Plaintiff's

symptoms." He then explained that Plaintiff's "very conservative" treatment history does not

support the severity of Plaintiff's testimony. Finally, he described inconsistencies between the

alleged severity of Plaintiff's symptoms and Plaintiff's reported activities of daily living

("ADLs"). AR 19-20. The question is whether any of these are "clear and convincing" reasons

for discounting Plaintiff's subjective symptom testimony. *Lingenfelter*, 504 F.3d at 1036

(quoting *Smolen*, 80 F.3d at 1281).

### 1.  Unsupported by Objective Medical Evidence

The ALJ found that the medical record did not support the severity of Plaintiff's

symptoms. It was legal error to rely on this finding to discount Plaintiff's testimony for two

reasons. First, the "Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ here did exactly that—he acknowledged that Plaintiff's impairments could be expected to cause the alleged symptoms but rejected Plaintiff's testimony because the medical record did not support Plaintiff's account of the severity of those symptoms. Second, it is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918 (9th Cir. 1993). The ALJ summarized portions of the medical record, including some of Plaintiffs' mental status exams. AR 19. But the ALJ did not link that medical evidence to any specific testimony. That was legal error.

### 2. Conservative Treatment

The ALJ also cited Plaintiff's "very conservative" treatment record as a reason to discount her testimony. In principle, this is a valid reason to reject a claimant's subjective symptom testimony. Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). And the amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3).

The ALJ's finding that Plaintiff's treatment record was "very conservative" is not supported by substantial evidence. The ALJ noted that Plaintiff "has been treated with therapy as well as multiple medications including Cymbalta, Zoloft, Restoril, Klonopin, fluoxetine, Effexor, Ativan, clonazepam, Lamictal, prazosin, and Ambien." AR 19. *See Drawn v. Berryhill*, 728 Fed. App'x 637, 642 (9th Cir. 2018) (rejecting characterization of treatment as conservative where the claimant was taking "a number of psychiatric medications"). Plaintiff also underwent intensive

inpatient psychiatric treatment after her January 2011 suicide attempt, which the ALJ failed to mention. AR 346.

The ALJ characterized Plaintiff's treatment record as "not generally . . . the type of medical treatment that one would expect for a totally disabled individual." AR 20. The ALJ, however, did not elaborate on what treatment one would expect for a person totally disabled by the kind of psychiatric conditions Plaintiff suffers from, nor did the ALJ explain why the medication Plaintiff took, the therapy Plaintiff underwent, and the inpatient treatment Plaintiff received constituted "conservative treatment." Other courts have found that a failure to identify what additional treatment a totally disabled person would obtain suggests that the ALJ impermissibly relied on his own lay medical opinion. *See Schultz v. Colvin*, 32 F. Supp. 3d. 1047, 1060 (N.D. Cal. 2014). Similarly, the ALJ here cited no statement by a medical professional suggesting that Plaintiff's course of treatment was conservative.

The Ninth Circuit has cautioned that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation" "because mental illness is notoriously underreported." *Regennitter v. Commissioner of Social Sec. Admin*, 166 F.3d 1294, 1299–300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). Considering that guidance and the record, Plaintiff's record of "conservative treatment" is not a clear and convincing reason to discount her subjective symptom testimony.

### 3.  Inconsistency with ADLs

The ALJ explained that he discounted Plaintiff's subjective symptom testimony because her "alleged limitations are not fully supported by her reported activities in the medical and other evidence of record." AR 20. Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina*, 674 F.3d at 1112-13; *Orn*, 495 F.3d at 639.

For daily activities to discount subjective symptom testimony, the activities do not need to be

equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a

totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be

utterly incapacitated to receive disability benefits, and completion of certain routine activities is

insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a

"claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks

omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be

'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th

Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on

certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise,

does not in any way detract from her credibility as to her overall disability. One does not need to

be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603

(9th Cir. 1989))); *Reddick*, 157 F.3d at 722 (requiring the level of activity be inconsistent with

the plaintiff's claimed limitations to be relevant to his or her credibility and noting that

"disability claimants should not be penalized for attempting to lead normal lives in the face of

their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be

a common occurrence, and it is error for an ALJ to pick out a few isolated instances of

improvement over a period of months or years and to treat them as a basis for concluding that a

plaintiff is capable of working. *See Garrison v. Colvin*, 759 at 1017.

  The ALJ described several activities that he believed "indicate[d] a higher level of

function than that alleged by [Plaintiff]." AR 20. Plaintiff reportedly could perform adequate

self-care, prepare simple meals, do household chores, and sometimes shop for groceries. During

the alleged period of disability, Plaintiff also attended concerts, tried to take classes at

community college, and traveled with family to New Mexico, Costa Rica, and Germany. It was rational to interpret these activities as contradicting some parts of Plaintiff's testimony, even if Plaintiff insists that she did not travel in a typical manner. But the ALJ did not explain which subjective symptom testimony these ADLs refuted. He merely stated that they "indicate a higher level of functioning that that alleged" by the Plaintiff. AR 20. That falls short of the ALJ's duty to make more than "only general findings." *Dodrill,* 12 F.3d at 918. The ALJ here described "what evidence suggests the complaints are not credible," but did not connect it to specific portions of Plaintiff's symptom testimony. Even if the relevant testimony seems obvious, "a reviewing court . . . may not affirm the Commissioner on a ground upon which the Commissioner did not rely." *Bray*, 554 F.3d at 1226.

## E.  Lay-Witness Testimony of Plaintiff's Sister

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

Plaintiff's sister reported that Plaintiff's anxiety made it "impossible for her to interact normally with other people." AR 284. The anxiety also impacted Plaintiff's cognition, and Plaintiff reportedly struggled to maintain focus on household chores. AR 286. Plaintiff's sister noted that sometimes Plaintiff could not leave the house for days at a time, and that her anxiety prevented her from going out alone when she did leave the house. AR 287. The ALJ did not give

the statement from Plaintiff's sister significant weight, because it was "not consistent with the preponderance of medical and other evidence of record, as well as the opinions and observations by medical and mental specialists in this case." AR 21. That is a germane reason to discount the statement from Plaintiff's sister. The ALJ discussed these inconsistencies at length when addressing Plaintiff's subjective symptom testimony and the medical source opinions of Ms. Dyche and Ms. Lieberman. The ALJ "need only point to those reasons" to reject the lay witness testimony of Plaintiff's sister. *Molina*, 674 F.3d at 1114.

## F.  Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the

improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its

discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however,

and is not required to credit statements as true merely because the ALJ made a legal error. *Id.*

at 408.

The ALJ committed reversible error in formulating the RFC, rejecting the medical

opinion testimony of Dr. Smyth, and rejecting Plaintiff's subjective symptom testimony. The

Court does not, however, find that the record is free of all conflicts and ambiguities.

Accordingly, further proceedings will be useful.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND

REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 27th day of April, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge